UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

|  |  |
|---|---|
| SSM MANAGED CARE ORGANIZATION, LLC, | Case No. |
| Plaintiff, | DEFENDANT'S NOTICE OF REMOVAL UNDER 28 U.S.C. §§ 1441(c), 1442(a)(1), 1446, AND 1331 (FEDERAL QUESTION AND FEDERAL OFFICER JURISDICTION) |
| vs. | |
| RIGHTCHOICE MANAGED CARE, INC., | |
| Defendant. | |

TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI:

PLEASE TAKE NOTICE that Defendant RightCHOICE Managed Care, Inc. d/b/a

Anthem Blue Cross and Blue Shield hereby removes this action from the Circuit Court of St.

Louis County, Missouri, to the United States District Court for the Eastern District of Missouri,

being the district and division in which the action is pending. Removal is proper pursuant to 28

U.S.C. §§ 1441(c), 1442(a)(1), 1446, and 1331.

## Procedural Matters and Nature of the Action

1.       On October 30, 2014, Plaintiff SSM Managed Care, Inc. ("Plaintiff") filed a civil petition (the "Complaint" or "Compl.") in the Circuit Court of St. Louis County, Missouri, against Defendant.  Plaintiff served the Complaint on Defendant's authorized representative on October 31, 2014.  A copy of all process, pleadings, orders, and other papers or exhibits of every kind that have been filed in that action are attached to this Notice as Composite Exhibit "A."[1]

2.       According to the Complaint, "Defendant, or a related entity, entered into a contract with CMS [the Centers for Medicare and Medicaid Services within the United States Department of Health and Human Services] to administer [a Medicare Advantage] plan in Missouri."  Compl. ¶ 6.  The Complaint next alleges that "Defendant then entered into the Facility Agreement with SSM, pursuant to which the SSM Hospitals and facilities have provided and continued to provide health care services to Medicare beneficiaries enrolled in Defendant's MA plan." Compl. ¶ 7.  (For ease of reference herein, this Notice shall refer to "Defendant, or a related entity" that has entered into a Medicare Advantage contract with CMS as "Anthem.")

3.       The Plaintiff further asserts that, pursuant to the Facility Agreement, Anthem agreed to compensate Plaintiff for healthcare services furnished by SSM Hospitals to Anthem's Medicare Advantage members "in accordance with the Medicare Advantage rate in effect at the time the Covered Service is rendered, and as set forth in the Attached Rate Sheet to the Agreement." Compl. ¶ 8.  Plaintiff alleges further that the Rate Sheet requires Anthem to pay Plaintiff "an amount equal to" 105% of the inpatient and outpatient rates "based on CMS", Compl. ¶ 9, and that "the rate will include, without limitation, base rate as determined by CMS including disproportionate hospital and/or capital indirect medical education (IME), if applicable,

---

[1] Exhibits to the Complaint were filed under seal and, thus, are being filed under seal as well with this Notice of Removal.

outlier payments; and special reimbursement guidelines issued by CMS."  Compl. ¶ 11.  Plaintiff incorrectly alleges the Rate Sheet requires Anthem to pay "an amount equal to" 105% of certain CMS rates as the Rate Sheet's introductory sentence instead provides that "[t]he following Rate Sheet represents the *maximum* reimbursement amounts for the provision of Covered Services to Covered Individuals in the Networks identified below."  (Emphasis added.)

4.      Plaintiff asserts that it has been underpaid because Anthem allegedly has applied the federal Sequestration Law and Presidential Order of March 1, 2013 improperly to the Medicare payments owed to Plaintiff under the Agreement. Compl. ¶¶ 14-18.  The Complaint includes only two causes of action: one for breach of contract, and another for unjust enrichment, both of which seek recovery of damages, interest and penalties, and reasonable attorney's fees and costs.[2]

5.      This Notice of Removal is timely under 28 U.S.C. § 1446(b), since it has been filed with this Court within 30 days of service of the initial pleading setting forth the claim for relief.

6.      The venue for this removal action is proper pursuant to 28 U.S.C. § 1441(a) because the United States District Court for the Eastern District of Missouri embraces the judicial circuit that includes the Circuit Court of St. Louis County, Missouri, where the state court action was filed. Such venue is represented as proper solely for removal purposes.

7.      This Court has original jurisdiction of this action pursuant to 28 U.S.C. § 1442, 28 U.S.C. § 1331, and 42 U.S.C. §§ 1395, *et seq.*

8.      No Act of Congress prohibits the removal of this case. This cause is removable under 28 U.S.C. §§ 1441-1453.

---

[2] The breach of contract claim contains a request for vexatious refusal damages per § 376.383(6) R.S.Mo.

9.      Immediately upon the filing of this Notice of Removal, Anthem will give written notice to Plaintiff's counsel of the removal of this case and will file a copy of this Notice of Removal with the Clerk of the Circuit Court of St. Louis County, Missouri, pursuant to 28 U.S.C. § 1446(d).

**<u>This Action is Removable Under the Federal Officer Removal Statute</u>**

10.     Anthem, a Medicare Advantage Organization ("MAO") that administers Medicare Advantage Plans through one or more contracts with CMS under Medicare Part C, is a federal officer for purposes of the federal officer removal statute, 28 U.S.C. § 1442(a)(1), and, as such, has a right to remove this action to federal court. The federal officer removal statute permits removal of any action against:

> The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

28 U.S.C. § 1442(a)(1).

11.     Title 28 U.S.C. § 1442(a)(1) "grants independent jurisdictional grounds over cases involving federal officers where a district court otherwise would not have jurisdiction." *Jacks v. Meridian Resource Co., LLC*, 701 F.3d 1224, 1230 (8th Cir. 2012).  Section 1442(a)(1) allows removal to a federal forum of any civil action against the United States or any agency thereof or any officer (or any person acting under that officer) if  the following four elements are met:  "(1) a defendant has acted under the direction of a federal officer, (2) there was a causal connection between the defendant's actions and the official authority, (3) the defendant has a colorable defense to the plaintiff's claims, and (4) the defendant is a "person" within the meaning of the statute."

4

*Jacks,* 701 F. 3d at 1230; *Dunevant v. Healthcare USA of Missouri, LLC*, 2008 WL 4066384 (E.D. Mo. Aug. 27, 2008).  All four elements are met here, and therefore removal is proper.

12.     *First*, Anthem is a MAO that satisfies the "acting under" requirement.   Under Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395-1395ccc, commonly known as the Medicare Act, Congress established a federally subsidized health insurance program that is administered by the Secretary of HHS. *See Heckler v. Ringer,* 466 U.S. 602, 605 (1984).  The Secretary has assigned responsibility for administering the Medicare program to the Centers for Medicare and Medicaid Services ("CMS"), which in turn has delegated the administration of benefits through contracts with MAOs like Anthem. *See* 42 U.S.C. § 1395w-27.  Anthem has been authorized to act for a federal officer in affirmatively executing duties under federal law.  Anthem assists the Secretary and CMS in carrying out a basic governmental task—providing Medicare healthcare benefits that, absent Anthem's contract with CMS and Anthem's Agreement with Plaintiff, the federal government would have to provide itself. *See  Jacks*, 701 F.3d at 1234 (holding federal officer removal was proper in action brought against a private health plan company that contracted with the federal government to provide health care insurance for federal employees under the Federal Employees Health Benefits Act of 1959); *Marsaw v. Thompson,* 133 Fed. App'x 946, 949 (5th Cir. 2005) (Medicare contractor "was acting under the direction of the federal government in performing duties delegated by HHS").

13.     Medicare Part A covers inpatient hospital admissions, care in a skilled nursing facility, hospice care, and some home health care. *See* 42 U.S.C. § 1395d. Medicare Part B covers physician services, outpatient hospital services, medical supplies, and preventive services. *See id. §* 1395k; 42 C.F.R. § 410.3(a).  Medicare Parts A and B, also known as "Original Medicare," are directly administered by CMS.  "In 1997, as a part of the Balanced Budget Act of 1997, Congress

enacted changes to Medicare, partly to cut costs and partly to provide Medicare recipients with a greater variety of health care choices." *Mann v. Reeder,* No. 10-CV-00133, 2010 WL 5341934, at *3 (W.D. Ky. Dec. 21, 2010). "These changes included the enactment of Part C[,] which allows Medicare beneficiaries to opt out of traditional coverage under Medicare Parts A and B," and into Medicare Advantage Plans offered by MAOs such as Anthem. *Id.*   In creating the Medicare Advantage program, Congress intended that MAOs would effectively stand in the shoes of CMS:

> Under original fee-for-service, the Federal government *[i.e.,* CMS] alone set legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that [the Part C] legislation provide a clear statement extending the same treatment to private Medicare [Advantage] plans providing Medicare benefits to Medicare beneficiaries.

H.R. Rep. No. 105-217, at 638 (1997), *available at* http://www.gpo.gov/fdsys/pkg/CRPT-105hrpt217/pdf/CRPT-105hrpt217.pdf.   Because MAOs are responsible for providing the same healthcare benefits under federal law as CMS administers under Original Medicare, "Medicare Advantage plans are regulated, monitored, and directly controlled by CMS." *Mann,* 2010 WL 5341934, at *3.

14.      Anthem was authorized to assist the Secretary and CMS in carrying out their statutory obligation to provide Medicare benefits to Medicare Advantage beneficiaries. This basic governmental task of providing healthcare benefits would have been performed by the Secretary and CMS if Anthem had not stepped into their shoes pursuant to its contract under federal law. Absent Anthem's contract with CMS and its Agreement with Plaintiff, reimbursement for services rendered by Plaintiff's affiliated hospitals to Medicare beneficiaries still would have been subject to CMS's application of the "new" federal sequestration adjustment.   Plaintiff acknowledges in the Complaint that the sequestration reduction is "the elimination of budgetary

resources under a presidential order",  Compl. ¶ 14, and that "pursuant to the Sequestration Law

and Presidential Order of March 1, 2013, CMS began reducing payments it made to MAOs . . .

and other programs by 2%." Compl. ¶ 15.   Accordingly, Anthem is simply "acting under" CMS in

applying the sequestration reduction.

       15.     *Second,* Anthem satisfies the "causal connection" criterion under the federal

officer removal requirements.   As the Supreme Court has acknowledged, "[g]overnment

contractors fall within the terms of the federal officer removal statute, at least when the relationship

between the contractor and the Government is an unusually close one involving detailed regulation,

monitoring, or supervision." *Watson*, 551 U.S. at 153.   And here, the action of which Plaintiff

complains—application of a newly created federal sequestration reduction that resulted in CMS

reducing Medicare payments to MAOs by 2%—involves alleged conduct that occurred in the

context of Anthem performing its duties under federal law pursuant to a comprehensive and

complex regulatory framework imposed by the Medicare Act, 42 U.S.C. §§ 1395-1395ccc, and the

Budget Control Act of 2011, Pub. L. 112-25, S. 365, 125 Stat. 240 (enacted August 2, 2011).

       16.     Many courts have concluded that private companies like Anthem that administer

Medicare Advantage Plans under Medicare Part C are persons acting under the direction of the

Secretary and are therefore capable of meeting the requirements for removal under 28 U.S.C. §

1442(a)(1). *See, e.g., Manorcare Potomac v. Understein,* No. 02-CV-1177, 2002 WL 31426705, at

*1 n.1 (M.D. Fla. Oct. 16, 2002) ("Aetna sufficiently alleges . . . that [its] obligations . . . as a

provider of 'Medicare + Choice' benefits under contract with the Health Care Financing

Administration of the United States Department of Health and Human Services qualifies Aetna as

a 'person acting under' an agency or officer of the United States for purposes of the Federal

Officer Removal Statute."); *Mann,* 2010 WL 5341934, at *3 (holding that the administrator of a

Medicare Advantage plan is deemed an "officer" under the statute, and may remove to federal court "claims asserted [] against [it] . . . due to [its] actions as a Medicare Advantage Plan provider"); *see also Neurological Assocs. v. Blue Cross/Blue Shield of Fla.*, 632 F. Supp. 1078, 1080 (S.D. Fla. 1986) (removal appropriate where doctor filed suit in state court seeking damages under state law related to his allegedly unlawful suspension under Medicare program by fiscal intermediary).

17.     *Third*, Anthem satisfies the requirement to have a colorable federal defense. The Eighth Circuit holds that the defense "need only be plausible." *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001). Anthem maintains that, among other things, under the Facility Agreement with Plaintiff, the maximum possible reimbursement for services rendered to Medicare Advantage beneficiaries is determined in whole or in part by a Medicare reimbursement methodology developed and promulgated by CMS. The Facility Agreement also confirms the mutual understanding of Anthem and Plaintiff that, when they agreed to base the maximum reimbursement upon a Medicare methodology determined by CMS, the parties intended to adjust payments under the Agreement in accordance with any adjustments to reimbursement methodologies that CMS might implement. In particular, the Agreement provides that the maximum reimbursement of services is "based on CMS", which further underscores the parties' understanding that Plaintiff would be paid for services in the same manner that CMS pays for services rendered by providers in Parts A and B. The Budget Control Act of 2011 changed the manner in which CMS paid for services rendered to Medicare beneficiaries by requiring the application of a sequestration reduction effective April 1, 2013. As an MAO that has stepped into the shoes of CMS and is acting under CMS, Anthem accordingly applied a sequestration reduction,

as Plaintiff acknowledged. *See* Compl. ¶ 27.  Thus, Anthem has a colorable federal defense based on CMS's change in reimbursement methodology under federal law.

18.	*Fourth,* Defendant satisfies the "person" requirement because a corporation is a person within the meaning of the federal officer removal statute. *See* 1 U.S.C. § 1 (in "any Act of Congress," the word "person" shall include "corporations"); *Lopez v. Three Rivers Elec. Coop.*, 166 F.R.D. 411 (E.D. Mo. 1996); *Jones v. Three Rivers Elec. Coop.*, 166 F.R.D. 413 (E.D. Mo. 1996); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) ("it is clear that corporations are 'persons' within the meaning of the [federal officer removal] statute"); *Depascale v. Sylvania Elec. Prods.*, 584 F. Supp. 2d 522, 526 (E.D.N.Y. 2008) (same); *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008) (applying federal officer removal statute to corporations).

19.	The fundamental purpose of federal officer removal jurisdiction is to "protect the Federal Government from . . . interference with its 'operations'. *Watson v. Philip Morris Cos.*, 551 U.S. 142, 150 (2007). To achieve its purpose, the federal officer removal statute is to be broadly construed.  *Jacks*, 701 F.3d at 1230; *see also City of Cookeville v. Upper Cumberland Elec. Membership Corp.*, 484 F.3d 380, 389 n.5 (6th Cir. 2007) (stating that the federal officer removal statute "is broad and allows for removal when its elements are met regardless of whether the suit could originally have been brought in a federal court." (quotation omitted)); *Joseph v. Fluor Corp.*, 513 F. Supp. 2d 664, 671 (E.D.La. 2007) ("Indeed, the Court must interpret the statute liberally, resolving any factual disputes in favor of federal jurisdiction."); *Progressive Specialty Ins. Co. v. Hanson,* No. 12-CV-0734, 2012 WL 5966638, at *1 n.1 (M.D. Ala. Nov. 28, 2012) (finding federal officer removal proper regardless of whether the Medicare Act deprives federal courts of primary federal-question subject matter jurisdiction of claims arising thereunder prior to

administrative exhaustion). In addition, the Supreme Court has found that the statute "serves to overcome the 'well-pleaded complaint' rule which would otherwise preclude removal even if a federal defense were alleged." *Mesa v. California,* 489 U.S. 121, 136-37 (1989) (citation omitted).

20.     For all of the foregoing reasons, Plaintiff's action is properly removed to this Court under the federal officer removal statute.

## This Action is Removable Because It Raises a Substantial Federal Question and Thus Arises Under the Laws of the United States

21.     Removal of a case from state to federal court is proper if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a).  A civil action filed in state court may be removed to federal court under § 1441(c)(1)(A) if the claim is one "arising under" federal law. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003) (applying former 28 U.S.C. §1441(b), which then had like wording). Pursuant to 28 U.S.C. § 1331, federal courts have subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331.  To determine whether a claim arises under federal law, a court must examine the "well pleaded" allegations to determine whether those allegations present a federal question. *Beneficial Nat'l Bank*, 539 U.S. at 6.

22.     The Supreme Court has recognized an exception to the well-pleaded complaint rule by which a case can be found to "arise under" federal law even when the complaint contains only claims pursuant to state law. *Grable & Sons Metal Prods., Inc., v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312-14 (2005).  In particular, a plaintiff may not avoid federal jurisdiction if either (1) his state-law claims raise substantial questions of federal law, or (2) federal law completely preempts his state-law claims. *See, e.g., Dunlap v. G & L Holding Group, Inc.*, 381 F.3d 1285, 1290 (11th Cir. 2004) *(citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). For a court to find that a state-law claim raises substantial questions of federal law, "the question is,

does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable*, 545 U.S. at 314; *see New York City Health & Hosps. Corp. v. Wellcare of1V.Y., Inc.*, 769 F. Supp. 2d 250, 256-57 (S.D.N.Y. 2011) (resolution of embedded interpretation of Medicare Act justified *Grable* jurisdiction).

23.       As this rule suggests, *Grable* and its progeny hold that federal-question jurisdiction exists where: (i) a state-law claim depends on the resolution of a disputed federal issue, (ii) the federal interest in the issue is disputed and substantial, and (iii) exercising jurisdiction would not disrupt the congressionally approved balance between federal and state jurisdiction. *See* 545 U.S. at 313-14. Applying these factors, removal is proper in this action for the following reasons:

24.       *First,* the action, as pled by Plaintiff, turns on a substantial federal question regarding the proper construction, application, and effect of the newly created sequestration reduction in federal spending as established and implemented through the Budget Control Act of 2011 and the Medicare Act and its associated rules and regulations.

25.       *Second,* the federal government's interest in this issue is substantial and disputed because the federal sequestration reduction has impacted many MAOs of Medicare providers, and there is disagreement between these two groups as to how the federal sequestration reduction impacts payment for services rendered to Medicare Advantage beneficiaries. Indeed, attached to the Complaint is a May 1, 2013 CMS guidance letter to MAOs and a separate April 17, 2014 CMS letter to the American Hospital Association, both of which seek to explain how the federal sequestration reduction is to be implemented. *See* Compl. Exs. D & E.  Recently, a similar sequestration reduction lawsuit brought by a hospital against another MAO was removed from

state court to the United States District Court for the Southern District of Florida following a Notice of Removal the MAO filed based on federal officer and federal question jurisdiction. *See Boca Raton Regional Hospital, Inc. v. Humana Medical Plan, Inc.*, Case No. 9:14-cv-81218-WJZ (S.D. Fla.).

26.     *Third,* the balance between federal and state jurisdiction will not be affected because Medicare already has an administrative review process that does not interfere with state courts, and resolution of this matter by this Court is likely to reduce or eliminate duplicative state court lawsuits.

27.     Other courts have applied *Grable* in suits involving the Medicare program and found removal proper where the plaintiff's claims depend in part upon an interpretation of a Medicare reimbursement mechanism. *See, e.g., New York City Health*, 769 F. Supp. 2d 250 (finding federal-question jurisdiction where health care provider brought breach of contract claim against licensed health plan, alleging that defendant paid amounts lower than what Medicare required); *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d 77, 80 (D. Mass. 2006) (finding federal jurisdiction over suit asserting state law claims that turned on interpretation of Medicare statute and regulations, because interpretation of Medicare statute "is a substantial federal issue that properly belongs in federal court. . . . [since it] directly impacts the viability and effectiveness of the federal Medicare program").

28.     In *New York City Health,* for example, the plaintiff health care provider alleged that defendant health plan breached its contract by paying plaintiff less than the amounts set by Medicare for services provided to defendant's Medicare enrollees. 769 F. Supp. 2d at 256. Citing *Grable,* the court noted that even "[w]here a plaintiff asserts no federal cause of action on the face of the complaint, the state action may nevertheless be removed to federal court where `the

plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Id.* at 255 (quoting *Empire Healthcare Assur., Inc. v. McVeigh*, 547 U.S. 677, 690 (2006), and citing *Grable*, 545 U.S. at 308, 312).

29.     With respect to the first prong of the *Grable* test, the court in *New York City Health* found that because plaintiff's claim required proving that defendant failed to pay the amounts set by Medicare, the complaint had raised a federal issue. *Id.* at 256.   The court recognized that the plaintiff's breach of contract claim alleged that the defendant, WellCare, was required "to pay health care providers according to the terms and conditions required by Medicare law and regulations." *Id.* The Court reasoned that, "in order to prevail on its breach of contract claim, [plaintiff] will have to prove that [defendant's] failure to pay the DRG amount violated Medicare law and regulations." *Id.* Therefore, the "breach of contract claim necessarily raises the issue of whether WellCare violated the Medicare laws and regulations incorporated by reference into its contract with CMS." *Id.*

30.     Under the second prong, the court found that WellCare met *Grable's* "substantial and disputed" requirement.  The court found the issue of Medicare reimbursement to be disputed insofar as plaintiff and WellCare disagreed regarding the effect of a CMS guidance letter upon the amount that plaintiff should be paid.  WellCare argued that its reimbursements to plaintiff "did not violate Medicare law or regulations." *Id.*; *see also In re Pharm. Indus. Average Wholesale Price Litig.*, 457 F. Supp. 2d at 81 (finding conflicting interpretations of the term "average wholesale price" in a Medicare statute, 42 U.S.C. § 1395u(o), was a "disputed issue" under *Grable* where the prevailing interpretation would determine the outcome of the case). And the court reasoned that this issue was substantial insofar as the case "implicate[d] the complex reimbursement schemes created by Medicare law" meaning "[t]he eventual outcome of [the]

litigation could potentially affect the hundreds of [MAOs] that . . . contracted with [the Centers for Medicare & Medicaid Services]." 769 F. Supp. 2d at 256-57.

31.      With respect to the third and final prong, the court found that granting federal jurisdiction would not tip the balance of federal and state judicial responsibilities, explaining that existing Medicare review procedures already permit review in federal court, and that adjudicating the instant case would not "open the floodgates and disrupt the litigation current" with similar state court cases. *Id.* at 258. Because the plaintiff's claims satisfied these three factors, the court concluded that federal question jurisdiction existed. *Id.* at 259.

32.      In this case, Anthem similarly satisfies all three prongs of the *Grable* test.

33.      *First,* as in *New York City Health,* Plaintiff's claims necessarily raise the issue of whether the parties are abiding by all Medicare laws, rules, and regulations as the Facility Agreement requires of both parties.  *See* Facility Agreement ¶ 9.7.  For example, Plaintiff seeks damages which are, in practical terms, the difference between the amount that Plaintiff alleges Anthem should have paid under the contract "based on CMS" and the amount that Anthem actually paid after subtracting the sequestration reduction from the payment.  In other words, for Plaintiff to pursue its claim, the Court must first address the central issue under federal law: the amount owed to Plaintiff "based on CMS" in light of the maximum reimbursement provision in the Rate Sheet and changes to Medicare payment rates following the sequestration reduction.

34.      *Second,* the federal interest in determining the proper construction and effect of the federal sequestration reduction in this context is disputed and substantial. As in *New York City Health,* the federal interest derives from the fact that Plaintiff's claim "implicates the complex reimbursement schemes created by Medicare law" as well as the proper interpretation of Sequestration Law in this context and the CMS guidance letter. *See* 769 F. Supp. 2d at 256-57.

The dispute arises from Anthem's contention that the language in the Agreement to reimburse Plaintiff "based on CMS" incorporates by reference the federal sequestration reduction, whereas Plaintiff disagrees with this interpretation. And it is obvious that the disputed issues are substantial because they implicate the complex reimbursement schemes created by federal Medicare law, which the parties linked their payment terms and conditions to directly in their Facility Agreement.  On its face, Plaintiff's Complaint does not plead a garden-variety breach of contract claim.

35.      *Third,* exercising federal jurisdiction will not disturb "any congressionally approved balance of federal and state judicial responsibilities" as described in *Grable.* 545 U.S. at 314.  Medicare's existing administrative review requirements limit any disruption with similar state court cases, and should the Court uphold jurisdiction and resolve the federal issue at hand, it may help bring some welcome uniformity to a regulatory framework in need of clear and consistent guidance. *See, e.g., New York City Health*, 769 F. Supp. 2d at 258-59. Indeed, it is likely that disputes have arisen between other MAOs and other providers as a result of the federal "sequestration adjustment."

36.      For the foregoing reasons, Plaintiff's action is properly removed to this Court under the federal question jurisdiction.

37.      The original filing form and civil cover sheet are attached hereto as Exhibits "B" and "C" respectively.

<u>**CONCLUSION**</u>

WHEREFORE, Defendant files this notice to remove the action, now pending in the Circuit Court of St. Louis County, Missouri, Case No. 14SL-CC03694, from that court to this Court, and requests that this action proceed in this Court as an action properly removed to it.

Respectfully submitted,

HOGAN LOVELLS, US LLP
600 Brickell Ave., Suite 2700
Miami, FL 33131
Telephone:  (305) 459-6500
Facsimile:  (305) 459-6550
Craig H. Smith, Esq. (*pro hac* application
forthcoming)

By: /s/ Neal F. Perryman
Neal F. Perryman, # 43057MO
nperryman@lewisrice.com
David W. Gearhart, # 50292MO
dgearhart@lewisrice.com
LEWIS, RICE & FINGERSH, L.C.
600 Washington Avenue, Suite 2500
St. Louis, Missouri 63101-1311
Telephone:  (314) 444-7661
Facsimile:   (314) 61-7661

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been served this

26th day of November, 2014, by U.S. Mail and via this Court's ECF system to:

Mark H. Levison
Carolyn M. Kopsky
Lashly & Baer, P.C.
714 Locust Street
St. Louis, Missouri 63101
mlevison@lashlybaer.com
cmkopsky@lashlybaer.com

/s/ Neal F. Perryman
Neal F. Perryman